Mr. James H. Siesky Attorney for the School Board of Collier County
QUESTION:
May a district school board enter into a proposed tax anticipation note plan to finance the entire amount of the school district's anticipated funding deficit for the 1981-1982 fiscal year?
SUMMARY:
Section 237.151, F.S., as amended, does not in terms authorize a district school board to borrow against anticipated ad valorem tax receipts for investment purposes but, rather, that section empowers a school board to borrow money not to exceed 80 percent of its budgeted anticipated tax receipts for any one fiscal year only for the purposes of paying outstanding obligations presently due and payable and current operating expenses when necessary and in the amount actually needed and when current school funds on hand at a given time are insufficient to pay such outstanding obligations are current operating expenses of the schools. The determination of the necessity for and the amount actually needed for the current loans contemplated by s. 237.151, F.S., as amended, and the earliest date practicable for their repayment are mixed questions of law and fact which this office is not authorized to resolve, and such determinations must be made by each district school board taking into consideration such factors as budget cash carryover and anticipated revenues from non-ad valorem tax sources as well as the board's anticipated ad valorem tax receipts during the course of the current fiscal year.
As stated in your letter, under the proposed Tax Anticipation Note Plan, the school board would borrow in October the entire amount of its expected deficit for the year, which amounts to approximately $7,000,000.00 this year. The net proceeds derived from the sale of the anticipation notes would then be invested at approximately 20 percent interest while the school board pays approximately 12 percent interest on the face amount of the notes issued and sold pursuant to the proposed plan. Under the Tax Anticipation Note Plan, no part of the principal amount borrowed would be repaid until June 1, 1982, even though the cash flow from tax receipts would be sufficient to satisfy the tax anticipation notes prior to that time.
In accordance with s. 230.23(10)(e), F.S. (1980 Supp.), the school board has the power to borrow money, as prescribed in ss. 237.141-237.171, when necessary in anticipation of funds reasonably to be expected during the year as shown by the budget. The provisions of s. 237.151, F.S., as amended by s. 6, ch. 81-104, Laws of Florida, must therefore be considered. Section 237.151, supra, provides as follows:
 At any time the current school funds on hand are insufficient to pay obligations created by the school board of any district, in accordance with the official budget of the district, the school board is authorized to negotiate a current loan to pay these obligations, providing for the repayment of that loan from the proceeds of revenues reasonably to be anticipated during the fiscal year in which the loan is made as prescribed below; provided, that the school board shall, whenever possible, so arrange its expenditures as to make the incurring of current loans unnecessary; provided further, that when it is deemed necessary, for the benefit of the schools of the district, for a current loan to be negotiated, the school board shall arrange for a loan only in the amount actually needed and for the repayment of the loan at the earliest date practicable. (Emphasis supplied.)
 (1) The school boards of the several districts in the state are hereby authorized and empowered to borrow money, to be retired from the district tax receipts anticipated in the operating budget, and the debt service budget, at a rate of interest not to exceed the rate authorized under the provisions of s. 215.84, for the purpose of paying all outstanding obligations and for the further purpose of paying any and all lawful expenses incurred in operating the schools
of said district; provided, however, that it shall be unlawful for any school board to borrow any sum of money in any 1 year in excess of 80 percent of the amount as estimated by them in the official budget for the current fiscal year for the district to be available from the district tax. The said sum so borrowed shall be paid in full before the school board shall be authorized to borrow money in any succeeding year. (Emphasis supplied.)
Another statutory provision which should be read in conjunction with the above provisions is s. 230.33(12), F.S. (1980 Supp.), as amended by s. 2, ch. 81-103 and s. 2, ch. 81-247, Laws of Florida, which provides that one of the duties and responsibilities of the superintendent of schools is to `[r]ecommend when necessary the borrowing of money as prescribed by law,' i.e., s. 237.151, F.S., as amended by s. 6, ch. 81-104, Laws of Florida.
In accordance with s. 237.151, F.S., as amended by s. 6, ch. 81-104, Laws of Florida, a school board is authorized to borrow money or negotiate a current loan only under certain conditions and as prescribed in subsections (1), (2), and (3) thereof. Section 237.151, supra, as amended, provides that when the current school funds on hand at any time are insufficient to pay the obligations created by the school board of that district, in accordance with its official budget (which apparently has reference to obligations presently or soon to become due and payable), then the school board is authorized to negotiate a current loan to pay those obligations. Subsection (1) of s. 237.151 authorizes the school board to borrow money, to be retired from the district tax receipts anticipated in the operating budget and the debt service budget for the purpose of paying alloutstanding obligations and all lawful expenses incurred inoperating the schools. In addition, subsection (1) makes it unlawful for a school board to borrow any sum of money in any one year in excess of 80 percent of the amount estimated by the board in its official budget for the current fiscal year to be availablefrom the district tax. Section 237.151 further provides that the school board shall, whenever possible, so arrange its expenditures as to make the incurring of the current loan unnecessary. If it is still necessary, for the benefit of the schools of the district, for a current loan to be negotiated, the school board, in accordance with s. 237.151(1), supra, `shall arrange for a loanonly in the amount actually needed and for the repayment of theloan at the earliest date practicable.' (Emphasis supplied.) The statute does not in terms authorize the district school boards to borrow against anticipated tax receipts for the purpose of increasing the districts' income or revenues or for the purposes of investment or reinvestment of the entire proceeds of the current loan. Section 237.151 authorizes the several school boards to borrow money to the extent of 80 percent of its budgeted anticipated tax receipts for the current fiscal year only for the purpose of paying outstanding obligations presently or soon to become due and payable and current operating expenses of the schools in the districts.
It is well settled that the powers of school boards are limited and defined by statute and may not be extended by construction.See AGO's 080-102, 075-256 and 075-148 and authorities cited therein. Moreover, when the controlling statute directs how a thing shall be done or authorizes public officials to proceed in a particular way or upon specific conditions, that is, in effect, a prohibition against it being done in any other manner. See AGO's 080-102, 078-66, 075-256, 075-148, and authorities cited therein.
The questions relating to a necessity for and the amount actually needed for a current loan and the earliest date practicable for its repayment are mixed questions of law and fact which this office is not authorized to resolve. Such determinations must be made by the affected school board or boards. In doing so and taking into consideration such factors as budget cash carryover and anticipated revenues from sources other than ad valorem taxes, the school superintendent, in making his or her recommendations as to the necessity for the borrowing of money pursuant to s. 230.33(12)(e), F.S., as amended, and the school board under s. 230.23(10)(e), as amended, must determine whether:
 (1) The entire amount of $7,000,000.00 is `actually needed' to pay obligations created by the school board of the district which are presently due and payable and current operating expenses because the current school funds on hand from any source are insufficient to pay the same when due?
 (2) June 1, 1982, is the `earliest date practicable' for repayment even though the cash flow from tax receipts and other sources of revenue would be sufficient to satisfy the tax anticipation notes or a portion thereof prior to that time?
 (3) Seven million dollars ($7,000,000.00) is in excess of 80 percent of the amount as estimated by them in the official budget for the current fiscal year for the district to be available from the district tax?
The word `actually' imports reality, as distinguished from form, method, hypothesis, conjecture, or surmise; and has been defined to mean; as an actual or existing fact; as a matter of fact; in fact, in reality, or in truth; really or truly. See 1 C.J.S.Actually, p. 1445. Black's Law Dictionary, 53 (4th Rev. ed. 1968), defines `actual' as, inter alia, real, substantial, existing, presently in act, having a valid objective existence as opposed to that which is merely theoretical or possible. The word `needed' as employed in the context of s. 237.151, F.S., appears to connote necessity, exigency, requirement or urgency. See The Random House Dictionary of the English Language, Unabridged Edition, at 956; see also 65 C.J.S. Need, p. 390.
The word `practicable' is defined as meaning that which may be done, practiced, or accomplished; that which may be practiced or performed; that which can be put into practice; that which is performable, feasible, possible. See 72 C.J.S. Practicable, p. 467. Black's Law Dictionary, 1335 (4th Rev. ed. 1968), defines `practicable' as, inter alia, that which is performable, feasible possible.
Regarding investments, s. 230.23(10)(k), F.S. (1980 Supp.), provides that the school board shall adopt policies pertaining tothe investment of school funds not needed for immediate expenditures, after considering the recommendations of thesuperintendent. That subsection goes on to provide as follows:
 The adopted policies shall make provisions for investing or placing on deposit all such funds in order to earn the maximum possible yield under the circumstances from such investments or deposits. The method of determining the maximum yield on investments or deposits shall include, but not necessarily be limited to, bids from qualified depositories, yields from certificates of deposit, yields from time deposits, yields from securities guaranteed by the Government of the United States, or other forms of investments authorized by law. (Emphasis supplied.)
Likewise, s. 230.33(12)(j), F.S. (1980 Supp.), provides as follows:
 The superintendent shall, after careful examination, recommend policies to the school board which will provide for the investment or deposit of school funds not needed for immediate expenditures which shall earn the maximum possible yield under the circumstances on such investments or deposits. The superintendent shall cause to be invested at all times all school moneys not immediately needed for expenditures pursuant to the policies of the school board. (Emphasis supplied.)
Thus, once any tax anticipation note proceeds are actually received, any investing of that portion of the proceeds which is surplus to the immediate needs or requirements of the school district is to be done by the superintendent and not by the school board. Although s. 230.23(10)(k), supra, does qualify the authority to invest such proceeds in those deposits and securities listed therein, the authority to invest is not necessarily limited to those deposits and securities listed but surplus funds may be invested in other forms of investments authorized by law. Although the school board by and through its superintendent is not required to invest such surplus proceeds, or any part thereof, in, for example, the Local Government Surplus Funds Trust Fund, created and governed by part IV of ch. 218, F.S., as amended by s. 20, ch. 81-167, Laws of Florida, this Act should be looked to as a viable alternative. The Local Government Surplus Funds Trust Fund and deposits and investments therein made by the school districts are administered by the State Board of Administration which is charged with a prudent person investment standard. See s. 218.409(2) and (3), F.S. In addition, only the costs incurred in making such investments and carrying out the provisions of part IV of ch. 218 are deducted from the interest earnings accruing to the trust fund, and such costs are prorated among the participating local governments, including school districts, in the percentage that each participant's deposit bears to the total trust fund. See s.218.409(7).
Prepared by: Linda Letters, Assistant Attorney General